**UNITED STATES, Appellee,**

v.

**Edward A. WHITE, Appellant.**

**No. 76–1728.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 29, 1977.

Decided Sept. 30, 1977.

Daniel P. Reardon, Jr., St. Louis, Mo., for appellant.

Frederick Eisenbud, Atty., U. S. Dept. of Justice, Washington, D. C. (argued), Barry A. Short, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

PER CURIAM.

Edward A. White was convicted on Counts I, III and IV of a four count indictment following a jury trial in the United States District Court for the Eastern District of Missouri.[1] Count I of the indictment charged a conspiracy to commit fraud in violation of 18 U.S.C. § 371. Count III charged that the defendant committed bank fraud in violation of 18 U.S.C. § 1014 and § 2. Count IV charged that the defendant made a materially false statement before a federal grand jury in violation of 18 U.S.C. § 1623. The defendant contends on his appeal that: (1) the government introduced insufficient evidence to warrant submitting the charges of conspiracy and bank fraud to the jury; (2) the government's failure to produce a witness resulted in a denial of his right of confrontation; and (3) a false statement he made before the grand jury was not material. We affirm the conviction.

The charges against the defendant arose out of a series of events which occurred during the period from August 1970, through March 1971, involving financial dealings between Charles Stern and the defendant. Stern was a Swiss citizen interested in investing in American business. He was president of Swiss Enterprise Corporation of Delaware.

In August of 1970, Stern met with Ivan Ezrine, who was his lawyer in New York and the defendant's unindicted coconspirator. A plan for Stern's investment in three American businesses, Micromation Technology Corporation, Steak n Shake, Incorporated, and the Mound City Bank & Trust Co., was discussed. Under the proposed plan the defendant was to invest substantial sums toward joint acquisition of the businesses with Stern. The evidence established that Stern was most interested in acquiring Micromation, while the defendant was intent upon acquisition of Steak n Shake.

Beginning in August of 1970, Ezrine began to request that Stern send money to the United States to finance the investments. Stern borrowed substantial amounts from Swiss banks to meet these requests. Upon receipt of the funds, Ezrine forwarded much of the money to White. Although Stern was most interested in acquiring control of Micromation, and had been told that many of the installments would be used for that purpose, it became apparent in early 1971 that White had at no time acquired any shares of Micromation for Stern, and that both White and Ezrine had been misrepresenting the status of the Micromation deal to Stern. Of the $1,075,000 which Stern sent to Ezrine and White, $700,000 was spent in an effort to purchase Steak n Shake, $25,000 went to Ezrine, and the remaining $350,000 was deposited and used by White and his corporations.

In order to raise money to finance Stern's proposed investments in the United States the Board of Directors of Swiss Enterprise Corporation passed a resolution at its meeting on August 10, 1970, authorizing the issuance of two and one-half million dollars worth of subordinated debentures. These debentures were to be marketed in Europe by Jean-Pierre Aubert, Stern's Swiss financial advisor. Ezrine had the authority to

---

1. The Honorable John F. Nangle, United States District Court for the Eastern District of Missouri.

supervise disbursement of the debentures in the United States.

After the debenture issue was authorized, Ezrine gave the defendant one million dollars worth of the securities without informing Stern. The defendant then pledged some of these debentures with a face value of $300,000 as collateral for a loan from the Missouri State Bank to one of defendant's corporations, White & Co. The defendant also sold debentures valued at $600,000 to the pension fund of a pipefitters union. Ezrine knew of these transactions but never informed Stern of them. In fact, when the Board of Directors of Swiss Enterprise Corporation met in December of 1970 it voted to rescind the August debenture issue, and neither White nor Ezrine disclosed White's use of a substantial number of the securities. The money White received for the debentures was used by White in his own business ventures.

■ The defendant contends that the government's evidence on the conspiracy charge was insufficient. The record reveals, however, that from the testimony of Ezrine alone the jury could conclude that Ezrine and White had entered into a course of conduct aimed at defrauding Stern.

A motion for acquittal should be granted only where "the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Frol*, 518 F.2d 1134, 1137 (8th Cir. 1975), *quoting United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973).

■ Proof of the existence of an agreement between Ezrine and White was necessary to support a charge of conspiracy against the defendant. *United States v. Skillman*, 442 F.2d 542, 547 (8th Cir. 1971), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). Circumstantial evidence can be sufficient to support the charge. *United States v. Hutchinson*, 488 F.2d 484, 490 (8th Cir. 1973). The jury was presented with more than ample evidence from which

it could be inferred that Ezrine and White, in light of their coordinated activities, had agreed to engage in the course of conduct followed. We find no error in the trial court's submission of Count I to the jury.

■ We likewise find no merit in defendant's similar contention under Count III that the evidence of bank fraud was insufficient. According to Ezrine's testimony, at the request of the defendant he made assurances as to the value of the Swiss Enterprise debentures pledged as collateral to an officer of the Missouri State Bank during March of 1971, three months after those debentures had been rescinded. Ezrine testified that the assurances were made in order to pacify the officer and "buy some time" so that the bank would not immediately foreclose on the collateral for White's loan. This testimony was sufficient to warrant submission of Count III to the jury.

■ The other contentions of the defendant on this appeal are without merit. The defendant contends that the government's failure to produce Jean-Pierre Aubert as a witness resulted in a violation of the Sixth Amendment. No statement by Jean-Pierre Aubert was admitted into evidence, and as a Swiss citizen he was beyond the subpoena powers of a United States Court. Under the circumstances the government had no further obligation to produce the witness to testify. *See United States v. Bentvena*, 319 F.2d 916, 941 (2d Cir. 1963); *Taylor v. Minnesota*, 466 F.2d 1119, 1122 (8th Cir. 1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973). The record demonstrates that the concededly false statements which the defendant made before the grand jury were material to its inquiry. The grand jury was investigating interstate transactions involving fraud. The defendant's false testimony related to representations he made to Stern to induce him to obtain a controlling interest in a domestic corporation.

The judgment of the district court is affirmed.