985 F.2d 129
 124 Lab.Cas. P 35,758, 24 Fed.R.Serv.3d 785,
1 Wage & Hour Cas.2d (BNA) 250
 Lynn MARTIN, Secretary of Labor, United States Department of
Labor, Plaintiff-Appellee,
v.
Angelo DEIRIGGI; Joseph Iaquinta, d/b/a Belmont Motor Inn,
d/b/a Ceasar's Supper Club, Defendants-Appellants.
 No. 92-1210.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 28, 1992.
Decided Dec. 31, 1992.
As Amended Jan. 25, 1993.
 
 Franklin Dorrah Cleckley, Morgantown, WV, (Ron L. Tucker, Fairmont, WV, on brief), for defendants-appellants.
 Lauriston Hardin Long, U.S. Dept. of Labor, Washington, DC (Marshall J. Breger, Sol., Monica Gallagher, Associate Sol., William J. Stone, Counsel for Appellate Litigation, James B. Leonard, Associate Regional Sol., on brief), for plaintiff-appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and PHILLIPS and WILLIAMS, Circuit Judges.
 
 OPINION
 POWELL, Associate Justice:
 
 1
 Appellants Deiriggi and Iaquinta, d/b/a Belmont Motor Inn and Ceasar's Supper Club, challenge on five separate grounds the district court's decision finding them liable for violations of the Fair Labor Standards Act of 1938 (FLSA), Ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201-219). Appellants claim that the district court failed to make adequate findings of fact for appellate review as required by Fed.R.Civ.P. 52(a). Appellants challenge three conclusions of the district court: (1) that the Belmont Motor Inn and Ceasar's Supper Club constituted a single enterprise within the meaning of § 203(r) of the FLSA; (2) that Appellants were liable for liquidated damages; and (3) that a three-year statute of limitations period applied because Appellants' violations of the FLSA were willful. Finally, Appellants allege that the district court abused its discretion in excluding evidence offered by Appellants to show hours and wages of Appellants' employees for 1987 and 1988. For the reasons stated below, we affirm.
 
 
 2
 * Appellants Deiriggi and Iaquinta own and operate the Belmont Motor Inn and Ceasar's Supper Club, a combination motel, restaurant and lounge in Fairmont, West Virginia. The two businesses are located on the same premises, and patrons who stay at the motel frequently dine and recreate at Ceasar's. The tax and financial records of the two businesses are intermingled. As of June 30, 1987, Appellants carried as many as thirteen employees on their payroll records.
 
 
 3
 The Secretary of Labor (the Secretary) brought an action against Appellants alleging violations of the minimum wage, overtime, and recordkeeping provisions of the FLSA.[1] The Secretary sought to enjoin Appellants' violations of the FLSA, and to restrain Appellants' withholding of back wages due as a result of their FLSA violations. Alleging that Appellants' violations of the FLSA were willful, the Secretary sought liquidated damages for three years of back wages allegedly owing to Appellants' employees.
 
 
 4
 On June 6, 7, and 11, 1991, a bench trial was held before Judge Kidd in the Northern District of West Virginia. The Secretary called thirteen witnesses, including the Wage-Hour Compliance Officer who conducted the investigation which gave rise to this case and the Compliance Officer who had conducted previous investigations of Appellants' businesses. The Secretary also called eleven of Appellants' current or former employees. Defendants called six witnesses, including both individual Defendants.
 
 
 5
 By order entered February 19, 1992, the district court found in favor of the Secretary. The district court enjoined the Appellants from future minimum wage, overtime, and recordkeeping violations of the FLSA. The court further restrained Appellants from withholding the payments of $43,209.10 in minimum wages and overtime compensation owed to their employees for the period of August 16, 1985 through March 30, 1989. The district court also determined that Appellants willfully violated provisions of the FLSA, and awarded liquidated damages equal to the amount of back wages that were found owing ($43,209.10). Appellants filed a timely notice of appeal.
 
 II
 
 6
 We first address Appellants' contention that the record before us does not provide an adequate basis for appellate review because the district court did not make sufficiently detailed findings of fact. Specifically, Appellants maintain that it was error for the district court to conclude summarily that Appellants violated the overtime provisions of §§ 207 and 215(a)(2), the minimum wage provisions of §§ 206 and 215(a)(2), and the recordkeeping provisions of §§ 211(c) and 215(a)(5).
 
 
 7
 The findings of fact entered by a district court are not to be set aside unless clearly erroneous. Even so, when a trial court provides:
 
 
 8
 only conclusory findings, illuminated by no subsidiary findings or reasoning on all the relevant facts ... there is not that detail and exactness on the material issues of fact necessary for an understanding by an appellate court of the factual basis for the trial court's findings and conclusions, and for a rational determination of whether the findings of the trial court are clearly erroneous.
 
 
 9
 EEOC v. United Virginia Bank/Seaboard Nat'l, 555 F.2d 403, 406 (4th Cir.1977).
 
 
 10
 Appellants take issue with many of the factual findings of the district court, and the following is an example of the types of complaints Appellants raise. With reference to overtime pay violations, the district court stated that "none of defendants' employees was paid an overtime rate of one and one-half times their regular rate for hours worked in excess of forty in any workweek for which such hours were worked." Appellants contend that this finding is insufficient because it does not inform this court which employees worked overtime and what time periods were involved. Appellants raise similar challenges to the district court's findings regarding minimum wage and recordkeeping violations.
 
 
 11
 Our review of the district court's opinion and the trial transcript does not confirm Appellants' allegations. In the findings of fact with respect to minimum wage, overtime pay, and recordkeeping violations, the district court in every instance cited to testimony at trial or evidence in the record to support the court's conclusions. For example, in concluding that Appellants violated the FLSA by failing to compensate their employees adequately for overtime work, the district court referred to: 1) the personal records kept by employees Richard Watson and Joyce Thorne; 2) the uncontradicted testimony of several cooks and waitresses that they regularly worked more than 40-hour weeks without receiving overtime pay; and 3) the testimony of employee Lucille Parker, as well as documentary evidence substantiating her testimony, that she worked overtime hours for which she did not receive appropriate compensation.
 
 
 12
 The inability of the court to provide more detailed findings resulted from the unavailability of accurate and complete employee wage and hour records. Where an employer fails to keep adequate and accurate records of employees' wages and hours as expressly required by the FLSA, the Secretary's burden of showing the extent of uncompensated work is reduced. Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). Here, the district court credited the testimony of Compliance Officer Tenney and others who testified that the Appellants destroyed records to prevent the Department of Labor from reviewing them. Under Mount Clemens, the Secretary need only produce evidence sufficient to show "as a just and reasonable inference" the amount and extent of work for which employees were not compensated adequately. Id. To support an award for back wages, the Secretary is not required to identify with specificity each and every employee who was undercompensated and for exactly what time period. Similarly, the district court cannot be required to state such specificity in the court's findings of fact. To impose such a requirement in a case where an employer destroyed employee records would be to reward the employer for his misdeeds.
 
 
 13
 While the district court did not identify which employees received inadequate compensation for exactly which time periods, the court did establish an apparent pattern of violations on the part of Appellants. The lengthy findings of fact and conclusions of law entered by the district court, in conjunction with trial testimony and documentary evidence referenced therein, provide an adequate basis for this court to determine whether such findings are clearly erroneous pursuant to Rule 52(a).
 
 
 14
 * Next we turn to Appellants' argument that the district court erred in concluding that the Belmont Motor Inn and Ceasar's Supper Club constituted a single enterprise operating in interstate commerce. The minimum wage and overtime protections of the FLSA extend to the employees of any "enterprise" with the requisite connection to interstate commerce.[2] Section 203(r) of the FLSA defines an enterprise as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r). This definition of an enterprise has three elements: 1) related activities performed; 2) under unified operations or common control; and 3) for a common business purpose. Brock v. Hamad, 867 F.2d 804, 806 (4th Cir.1989). Appellants concede that the two businesses were operated through unified operation or common control.
 
 
 15
 The FLSA does not define the term "related activities" under § 203(r). The legislative history indicates that related activities are those which are "the same or similar." S.Rep. No. 145, 87th Cong., 1st Sess. (1961), U.S.Code Cong. & Admin.News 1961, p. 1620. "Related, even if somewhat different, business activities can frequently be part of the same enterprise." S.Rep. No. 1487, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, pp. 3002, 3009. Courts have recognized that there is a close relationship between the "related activities" and "common business purpose" criteria for FLSA enterprise coverage. See Brock v. Executive Towers, Inc., 796 F.2d 698 (4th Cir.1986). The regulations promulgated by the Secretary of Labor indicate that retail selling, even involving different goods at different locations, constitutes "related activity" if the retailing is for a "common purpose". 29 C.F.R. § 779.207 (1985). Activities are performed for a common business purpose if they are "directed toward the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213.
 
 
 16
 The district court found that the motel and restaurant were "coordinated and interdependent" operations, directed toward the purpose of providing the complimentary services of lodging, food, and entertainment to travellers. The district court noted several facts about the intermingling of the two businesses which are uncontroverted. The two businesses are located on the same premises. Guests at the Belmont Motor Inn frequent Ceasar's Supper Club where their purchases can be charged to their motel bills. Motel patrons may order room service from Ceasar's. Accounting, financial, and tax records of the two operations are intermingled, and employees of the two establishments are interchanged occasionally.
 
 
 17
 In our view, the district court's conclusion that the Belmont Motor Inn and Ceasar's Supper Club operated as a single business enterprise reflects fairly the statutory language of § 203(r) as well as the relevant legislative history. The district court's conclusion did not rest solely, as Appellants contend, on the fact that the two businesses had "the goal of making a common profit." As Appellants note, courts have held that a joint profit motive is insufficient to support a finding of common business purpose. See Wirtz v. Columbian Mut. Life Ins. Co., 380 F.2d 903, 907 (6th Cir.1967); Griffin v. Daniel, 768 F.Supp. 532, 536 (W.D.Va.1991). Here the district court found, however, that the operations of the two businesses were directed toward making a profit and providing an array of complimentary services to travellers. We affirm the lower court's finding of a common business purpose based on those two findings, for which we find adequate support in the record. Accordingly, we also affirm the district court's conclusion that the two businesses operated as a single enterprise under the FLSA.
 
 B
 
 18
 Pursuant to § 216(c) of the FLSA, the district court awarded the Secretary liquidated damages in an amount equal to the back wages improperly withheld from the employees at the Belmont Motor Inn and the Ceasar's Supper Club. Appellants challenge the award of liquidated damages on procedural grounds. Relying upon the decision of the Second Circuit in Brock v. Superior Care, Inc., Appellants argue that liquidated damages are precluded here because the Secretary's complaint stated a cause of action only under § 217 of the FLSA. See Brock v. Superior Care, Inc., 840 F.2d 1054 (2d Cir.1988) (liquidated damages denied Secretary where Secretary's complaint was based solely upon equitable relief section of the FLSA).
 
 
 19
 When bringing an action under the FLSA, the Secretary has the option of proceeding under different sections of the Act which provide for different remedies. Section 217 provides an avenue for the Secretary to seek injunctive relief, including a restraint on the withholding of previously unpaid minimum or overtime wages. 29 U.S.C. § 217. Section 216(c) authorizes the Secretary to bring an action on behalf of an employee for unpaid overtime and minimum wages and to seek an equal amount as liquidated damages. 29 U.S.C. § 216(b).
 
 
 20
 A defendant's right to a jury trial depends upon which FLSA cause of action the Secretary decides to pursue. Actions for injunctive relief under § 217 are equitable in nature even though they may result in an order of back pay, thus the defendant has no right to a jury trial. Suits under § 216 for back pay and liquidated damages are considered actions at law, thereby implicating the defendant employer's right to a jury trial. Thus the statutory scheme gives the Secretary a choice: if she wants to recover liquidated damages, the price she pays is a jury trial for the defendant on the back pay issue; if she would rather forgo the jury trial, she can opt for injunctive relief under § 217 and obtain a back pay award as an equitable remedy incidental to an injunction.
 
 
 21
 Appellants contend that the district court's award of liquidated damages was improper because the Secretary framed her complaint as an action under § 217 of the FLSA. Appellants claim that the Secretary used this tactic to deprive Appellants of their right to a jury trial, similar to the misleading tactics used by the Secretary in Superior Care. In Superior Care, the Second Circuit reviewed a district court's award of liquidated damages in a case where the Secretary had framed the complaint as an action under § 217 of the FLSA. Because the prayer for relief in the Secretary's complaint mentioned liquidated damages, the district court construed the complaint as stating a cause of action under both §§ 216 and 217. The defendant protested that the complaint had not put him on notice that the Secretary was seeking liquidated damages under § 216(c), and that the Secretary's pleading tactics had deprived him of his jury right.
 
 
 22
 The Second Circuit agreed. The court reasoned that if the Secretary had wanted to pursue liquidated damages, the Secretary should have stated explicitly a § 216(c) cause of action in the complaint. The Second Circuit opined that the Secretary routinely attempts to "split [her] cause of action between the injunctive provisions of section 17 and the liquidated damages provision of section 216(c)" because the Secretary "finds jury trials too consuming and so frames the complaint in order to try the case as expeditiously as possible." Superior Care, 840 F.2d at 1064 n. 4.
 
 
 23
 Contrary to Appellants' claims, the case at bar is not identical to Superior Care. The Secretary's complaint in Superior Care was based solely on § 217 of the FLSA, the Act's provision providing independent federal subject matter jurisdiction in equity over FLSA questions. The Secretary points out that the complaint here is grounded expressly not just on § 217, but also on 28 U.S.C. §§ 1331 and 1345. Even so, the Secretary's omission of § 216(c) in the jurisdictional section of the complaint would seem to raise the same concerns addressed by the court in Superior Care.
 
 
 24
 Viewing the complaint in its entirety, however, we fail to see how Appellants could have been misled as to the Secretary's intention to seek liquidated damages under § 216(c). The first paragraph of the complaint in this action states plainly the Secretary's intention to seek liquidated damages. Moreover, while the Secretary's complaint in Superior Care merely mentioned the words "liquidated damages" in the prayer for relief, here the prayer for relief demands judgment pursuant to § 216(c) for liquidated damages equal in amount to the back wages found due by the court. Thus the Secretary's complaint here differs markedly from that at issue in Superior Care. The complaint here passes muster under Rule 8 of the Federal Rules of Civil Procedure by providing adequate notice to the Appellants of the Secretary's claim for liquidated damages pursuant to § 216(c). To hold otherwise would be to instigate a rule that a federal statutory cause of action is not pled unless reference to that statute appears in the jurisdictional statement section of the complaint. Moreover, even the Secretary of Labor is held only to a standard of notice pleading under the Federal Rules of Civil Procedure.
 
 
 25
 The six-page complaint at issue here discussed liquidated damages in two different paragraphs, and specifically invoked § 216(c). In our view Appellants were given adequate notice of the Secretary's intent to proceed under § 216(c). That notice triggered Appellants' obligation to demand a jury trial. By failing to make a timely demand Appellants waived their jury right. Fed.R.Civ.P. 38(a).
 
 
 26
 We conclude that a claim for liquidated damages under § 216(c) was adequately pled. Accordingly, the district court's award of liquidated damages was an act within that court's discretion that we will not disturb on appeal.
 
 C
 
 27
 Appellants dispute the district court's determination that Appellant's violations of the FLSA were willful and therefore subject to an extended statute of limitations period. The FLSA provides a statute of limitations of two years unless the cause of action arises from a "willful violation," in which case a three-year limitations period applies. 29 U.S.C. § 255(a). Thus, the Secretary may recover an additional year of back wages when a violation is willful. The standard for determining willfulness is whether the employer either knew, or showed reckless disregard, as to whether his conduct violated the Act. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).
 
 
 28
 Appellants claim that their conduct may have been unreasonable, but that it was neither knowing nor reckless. In classifying their own conduct as "unreasonable," Appellants attempt to take advantage of the following language from Richland Shoe:
 
 
 29
 If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... [its] action would [not] be considered willful under ... the ... standard we approve today.
 
 
 30
 Id. at 135 n. 13, 108 S.Ct. at 1682 n. 13.
 
 
 31
 Appellants contend that the facts in this case support only a finding of unreasonableness, and that the district court's conclusion to the contrary is based upon an erroneous interpretation of the facts.
 
 
 32
 The district court applied the correct legal standard and determined from all of the evidence before the court that: "there can be no doubt but that the defendants knew that their employment practices were in clear violation" of the FLSA. The district court devoted six pages of its opinion to reciting the facts and testimony underlying the court's determination of willfulness, including: the testimony of both Appellants, available evidence regarding Appellants' payroll procedures, and the testimony of Compliance Officers Tenney and McFadden. Perhaps most damaging was the evidence, deemed credible by the district court, that Appellants had destroyed some records and withheld others in order to impede the Department's investigation.
 
 
 33
 The district court's conclusion that the Appellants' violations of the FLSA were willful is a finding of fact, not to be disturbed by this Court unless clearly erroneous. When, as here, findings are tied closely to a trial court's witness credibility determinations, appellate courts give great deference to the trial court's factual findings. Anderson v. City of Bessemer City, 470 U.S. 564, 575-76, 105 S.Ct. 1504, 1512-13, 84 L.Ed.2d 518 (1985). We find that there was ample evidence for the district court to find willfulness here, and thus to apply the three-year statute of limitations period.
 
 D
 
 34
 Finally, Appellants attack the district court's refusal to admit newly-found wage and hour documents during the trial on Appellants' FLSA violations. Appellants contend that these records would have drawn into question the accuracy and credibility of Officer Tenney's testimony regarding estimates of back wages due.
 
 
 35
 The documents at issue surfaced late in the trial, despite many previous requests by the government for documentation concerning wages and hours of Appellants' employees. Following the direct examination of the Secretary's final witness during trial, defense counsel stated that he had just learned of the existence of employee time records for the years 1987 and 1988. Defense counsel stated that one of Appellants' management employees (Agnes Shoemaker) had just revealed that "some of the records the government's been alluding to" did exist. A bench conference ensued during which the government's attorney opposed the admission into evidence of these records on the ground that they had "been deliberately withheld from us during the investigation and discovery." The government's attorney also indicated that he may not have any objections to the use of the records for cross-examination if Officer Tenney could first review the records out of court.
 
 
 36
 The district court declined to rule on the admissibility of the evidence at that time. Instead, the court scheduled an in camera hearing for the purpose of hearing testimony and argument on the matter. During this hearing, Agnes Shoemaker testified that the documents at issue were daily records of hours worked by Appellants' employees during 1987 and 1988, and that Appellants knew of the existence and whereabouts of these records at all relevant times.
 
 
 37
 Based on the evidence presented at the hearing, the district court concluded:
 
 
 38
 The Court ... is of the opinion that full and clear demands [were] made for the documents ... and that ample time has been ... given to supply them, that the defendants failed to supply them given every opportunity. It would only put a burden on the Government and the litiga[nts] to bring this matter in at this late date and the motion to admit these matters ... is overruled.
 
 
 39
 Appellants challenge the district court's conclusion that the admission of the records would cause an "undue burden" given the statement of the government's attorney at trial that he would be willing to have Officer Tenney review the records to revise his computations.
 
 
 40
 It is well-settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the district court, not to be reversed on appeal absent an abuse of discretion. Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1135 (4th Cir.1988). The district court was familiar with the history of this litigation, including Appellants' persistent resistance to providing requested records to the government. It was within the district court's discretion to exclude the records on the basis that it would be manifestly unfair to allow Appellants to introduce such evidence after the government had completed its case in chief.[3] See Imperial Colliery Co. v. Oxy USA, Inc., 912 F.2d 696, 706 (4th Cir.1990) (affirming district court's exclusion of evidence where defendant had withheld, until after plaintiff presented its case in chief, evidence previously requested by plaintiff). We decline to disturb that discretionary ruling on appeal.
 
 III
 
 41
 In sum, we find no merit to appellant's challenges to the judgment below. The judgment of the district court is accordingly
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 The FLSA's minimum wage, overtime, and recordkeeping requirements appear at 29 U.S.C. §§ 206, 207, 211(c)
 
 
 [2]
 The requisite connection to interstate commerce is shown where an employer has at least one employee who regularly ordered, received, and handled goods (such as food, liquor, and linens here) that originated outside the State of West Virginia and that the annual dollar volume of the sales of the enterprise exceeds $362,500. Appellants argue that the annual dollar volume of the sales for each of their businesses individually did not exceed $362,500
 It is the combined annual dollar volume of all parts of an enterprise that determines whether the threshold amount of sales under the FLSA has been met. The joint sales from the Belmont Motor Inn and Ceasar's exceeded $362,500 during the relevant time periods. Thus, if Belmont and Ceasar's are a single enterprise, the enterprise has the requisite contacts with interstate commerce for coverage under the FLSA.
 
 
 [3]
 A contrary ruling would encourage employers charged with FLSA violations to withhold wage and hour documentation until the government had presented its case in chief. By so doing, offending employers could assess whether the government's estimates of back wage liability were greater than the liability evidenced by the records themselves, and make their disclosure decision accordingly