**UNITED STATES of America, Appellee,**

v.

**J. Cesar Delecerda OJEDA, Appellant.**

No. 93–2875.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1994.

Decided May 12, 1994.

Lawrence F. Scalise, Des Moines, IA, argued (Donald L. Carr, II, on the brief), for appellant.

Gary L. Hayward, Des Moines, IA, argued (Lester Paff, on the brief), for appellee.

Before MAGILL and LOKEN, Circuit Judges, EISELE,[*] Senior District Judge.

MAGILL, Circuit Judge.

J. Cesar Delecerda Ojeda (Ojeda) appeals from the district court's [1] entry of judgment, following a jury verdict finding him guilty of possession with an intent to distribute methamphetamine. Ojeda asserts the district court erred when it denied his motion for judgment of acquittal. He also asserts the district court committed reversible error when it allowed the government to admit "prior bad act" testimony. We affirm.

## I. BACKGROUND

Ojeda, a resident of California, was arrested in Iowa en route to Rockford, Illinois. The vehicle Ojeda was driving, after being stopped for exceeding the speed limit, was found to contain 7.1 kilograms of methamphetamine. At the time, Ojeda and his nephew, Alejandro De La Cerda (Alejandro), were purportedly on a car trip to visit a relative.

Upon approaching the vehicle, the police officer detected a strong odor, later identified as pinesol, a cleaning agent commonly used to mask odors. The officer separated Ojeda from Alejandro and asked Ojeda where he was going and who owned the vehicle. Ojeda responded that Alejandro owned the vehicle and that they were traveling to Illinois to visit a relative. Apparently, prior to the stop, the officer had determined that the vehicle was owned by Gustavo Nunez. Upon further questioning, the officer determined that Ojeda knew neither the telephone number nor the address of his Illinois relative.

The officer testified at trial that in his experience a pervasive pine odor was often indicative of the presence of drugs. Consequently, the officer asked Ojeda whether he had any drugs in the vehicle. Ojeda denied the presence of drugs and consented in writing to a search. The officer's search revealed a black baggie protruding from a corner wheel well. The officer then summoned other officers and a drug-detecting dog.

The dog alerted, indicating there were narcotics in the vehicle. Ojeda and Alejandro were arrested, and the vehicle was seized. Upon further investigation, the vehicle was found to contain 7.1 kilograms of 88 to 91% pure methamphetamine. The methamphetamine, sealed in plastic baggies, was located in two electronically locked trap doors in the rear passenger seat area. The trap doors were opened with pins inserted in the driver's visor. Ojeda's fingerprints were found on the outside of several of the duct-tape-wrapped packages.

At trial, Ojeda and Alejandro testified that Ojeda was unaware of the presence of the drugs in the vehicle. Ojeda's fingerprints on the drug packages were explained by Ojeda's and Alejandro's testimony that Ojeda had unknowingly interrupted the drug-packaging process in a home he and his nephew were visiting just before the trip. Ojeda testified that he entered the packaging room, touched a couple of packages, and was asked by his nephew to leave. Alejandro testified that he told his uncle the packages contained "fayuca" or light-weight contraband, such as cosmetics or hose, intended for transport to Mexico.

At trial, Ojeda, who received permanent residency status pursuant to the 1986 Immi-

---

[*] THE HONORABLE G. THOMAS EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

[1]. The Honorable Ronald M. Longstaff, United States District Judge for the Southern District of Iowa.

gration and Reform Act,[2] testified on his own behalf. The government then, over objection, cross-examined Ojeda on his use of another name. Ojeda testified that he had used another name—Pedro Flores Vera—in the past, but he also testified that he did not recall precisely when he had used the name.

After the defense rested, the government offered a rebuttal witness, Martin Beisemeyer (Beisemeyer), an agent for the United States Immigration and Naturalization Service (INS). The government offered Beisemeyer's testimony in rebuttal to impeach Ojeda's cross-examination testimony regarding his use of another name. Beisemeyer testified that Ojeda used the other name on his application for permanent residency status and that Ojeda had once been arrested by a border patrol.

The jury found Ojeda guilty of the drug charge. Ojeda subsequently made a motion for judgment of acquittal, contending that the evidence was insufficient to sustain his conviction. The motion was denied by the district court, and it sentenced Ojeda to 264 months of imprisonment for knowingly and intentionally possessing with an intent to distribute 7.1 kilograms of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). Ojeda timely appealed.

## II. DISCUSSION

### A. The Sufficiency of the Evidence

"When reviewing the denial of a motion for judgment of acquittal, we examine the evidence in the light most favorable to the government." *United States v. Patterson,* 886 F.2d 217, 218 (8th Cir.1989). "[T]he government is given the benefit of any reasonable inferences drawn from the evidence." *Id.* Ojeda's burden is great. We must affirm the district court's denial of the motion unless the evidence is such that " 'a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.' " *See United States v. White,* 562 F.2d 587, 589 (8th Cir.1977) (quoting *United States v. Frol,* 518 F.2d 1134, 1137 (8th Cir.1975)).

Ojeda contends the government failed to prove that he (1) knowingly possessed the methamphetamine and (2) intended to distribute the drug. *See United States v. Brett,* 872 F.2d 1365, 1369 (8th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). We disagree.

As to the first element—knowing possession—Ojeda argues he was unaware that the vehicle contained methamphetamine. For the government to establish knowing possession, it must prove that Ojeda had actual or constructive possession of the methamphetamine. *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990). Constructive possession of contraband, such as the methamphetamine, is established through proof that the individual had "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *Id.*

Ojeda concedes he was the operator of the vehicle. Ojeda's challenge alleges that there was insufficient evidence for the jury to have found that he *knowingly and intentionally* possessed the drug. We have previously reversed a judgment of guilt where the evidence failed to establish beyond a reasonable doubt that the defendant knew he was carrying contraband. *See United States v. Pace,* 922 F.2d 451, 452 (8th Cir.1990). *But see United States v. Cortez,* 935 F.2d 135, 143 (8th Cir.1991) (affirming conviction despite driver's contention that he was unaware the vehicle contained 800 pounds of marijuana), *cert. denied,* —— U.S. ——, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992).

In *Pace,* the defendant, who was driving with a passenger, was stopped for speeding and aroused the suspicion of the police officer because neither occupant owned the vehicle. *Pace,* 922 F.2d at 452. The defendant signed a consent to search the vehicle and was subsequently arrested for possession with intent to distribute 200 pounds of cocaine. *Id.* at 452. The cocaine was found in several duffel bags and a suitcase belonging to the other passenger. *Id.* at 452–53. The defendant's personal luggage contained no drugs,

---

**2.** This Act permitted agricultural workers who were illegally in the country to apply for permanent residency status. *See* 8 U.S.C. § 1160 (1988 & Supp. IV 1992).

only personal effects. The government argued in *Pace* that the jury could properly infer that the defendant had knowledge of the presence of the drugs from the large quantity of cocaine, the high street value of the drugs, and the extended period of time spent by the defendant in the vehicle during its cross-country drive. *Id.* at 453. The *Pace* court disagreed and reversed, holding that the evidence was insufficient to support an inference that the defendant "knew he was driving a car full of cocaine." *Id.*

Because a jury rarely has direct evidence of a defendant's knowledge, it is generally established through circumstantial evidence. *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986). Our task here is to determine whether the circumstantial evidence of Ojeda's knowledge of the presence of the methamphetamine was sufficient for a reasonably minded jury to have found the possession element. The evidence supports the jury's finding that Ojeda knew of the presence of the drugs. In the instant case, Ojeda's fingerprints were on several of the drug packages. The vehicle had a strong odor of pine that likely would lead a naive passenger to question its presence. The electronically locked trap doors were opened with pins inserted in Ojeda's visor. In addition, Ojeda maintained that he was on the extensive car trip in order to visit a relative for whom he knew no address or telephone number. Because of the presence of these factors and also the factors cited by the government in *Pace,*[3] we cannot say that no reasonably minded jury could have found beyond a reasonable doubt that Ojeda was aware of the presence of the methamphetamine. *Cf. Cortez,* 935 F.2d at 143 (knowledge of possession could be inferred from 800 pounds of marijuana, complete and sole control, and evasive answers).

Ojeda also argues that there was insufficient proof that he intended to distribute the methamphetamine. Again, we disagree. An intent to distribute contraband may be established with circumstantial evidence. *United States v. Peters,* 912 F.2d 208, 211 (8th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991). "Intent to distribute may be inferred solely from the possession of large quantities of narcotics." *Schubel,* 912 F.2d at 956; *see also Brett,* 872 F.2d at 1370. Here, the defendant was found in possession of a significant quantity of relatively pure methamphetamine. The drug was carefully packaged and placed in uniquely designed compartments in a vehicle belonging to another individual. These factors taken together could lead a reasonably minded jury to have found an intent to distribute the drug.

Accordingly, because the evidence viewed in the light most favorable to the government does not establish that a reasonably minded jury *must* have had a reasonable doubt as to at least one element of the crime, *see White,* 562 F.2d at 589, the district court properly denied Ojeda's motion for judgment of acquittal.

## B. Admission of "Bad Act" Testimony

Ojeda argues that the government impermissibly cross-examined him on his prior use of another name. He testified he had used another name in the past and was asked on cross-examination, "when did you use the name Pedro Flores Vera?" II Tr. at 238. Ojeda responded, "I do not recall when." *Id.* A timely objection to this testimony was made by Ojeda's counsel. *Id.* As additional evidentiary error, Ojeda argues that the court erred when it allowed the government to call rebuttal witness Beisemeyer to the stand. Ojeda's counsel, however, failed to object to the admission of this testimony.[4] Arguing that the admission of the cross-examination testimony and the rebuttal testimony was prejudicial and irrelevant, Ojeda requests a new trial. We find no reversible error.

---

3. We have here, just as we did in *Pace, see* 922 F.2d at 453, an extended car trip and a large quantity of drugs with a high street value.

4. Ojeda maintains in his brief that his counsel objected to this testimony. Appellant's Br. at 11. However, a review of the record reveals no ob-

jection on the record. Ojeda's counsel did approach the bench and participate in a side-bar discussion prior to Beisemeyer's testimony, *see* II Tr. at 252, but no objection appears on the record throughout Beisemeyer's testimony, *see id.* at 252–56.

■ The district court properly permitted the government to cross-examine Ojeda regarding his use of another name. Specific instances of prior conduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination...." Fed.R.Evid. 608(b). Thus, the issue for this court is whether Ojeda's past use of another name is probative for truthfulness. We believe it is. If a man would lie about his name, a jury may reasonably infer that he would lie about other matters, even on the witness stand. *See Lyda v. United States,* 321 F.2d 788, 793 (9th Cir. 1963). Therefore, we find the district court did not abuse its discretion in admitting this testimony.

■ As to Ojeda's contention that the district court erred when it admitted Beisemeyer's testimony because it was irrelevant and prejudicial, we decline to review this claim. Without a finding of plain error, Ojeda's failure to object to Beisemeyer's testimony precludes our review.[5] *See* Fed.R.Evid. 103(a)(1) (a timely objection on the record required for a finding of error). We find no plain error affecting Ojeda's substantial rights.[6]

## III.  CONCLUSION

We affirm the district court's denial of Ojeda's motion for judgment of acquittal, and, finding no reviewable evidentiary error, we affirm the judgment imposed by the district court.

---

**5.** Moreover, Ojeda has waived the issue of whether Beisemeyer's testimony was properly admissible as extrinsic evidence of Ojeda's credibility by his failure to brief the issue. *See United States v. Simmons,* 964 F.2d 763, 777 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992) (issues not briefed are waived on appeal).

**6.** Beisemeyer testified that Ojeda had used another name. II Tr. at 254. Ojeda already testified to this fact. *Id.* at 238. Beisemeyer testified that Ojeda had been arrested by a border patrol. *Id.* at 255. Ojeda also already testified to this fact. *Id.* at 238–39.