UNITED STATES of America, Plaintiff,

v.

Jariel Vega VALDEZ, Defendant.

Crim. No. 94–60.

United States District Court,
S.D. Iowa.

Aug. 17, 1994.

Mary C. Luxa, Asst. U.S. Atty., Des Moines, IA, for plaintiff.

James F. Whalen, Asst. Federal Public Defender, Des Moines, IA, for defendant.

ORDER

WOLLE, Chief Judge.

Defendant Jariel Vega Valdez (Vega Valdez) is charged in a one-count Indictment alleging possession of cocaine with intent to distribute, in violation of Title 21 United States Code Section 841. After a short trial, in which the government presented only two witnesses and Vega Valdez none, the court submitted the case to the jury on August 8, 1994. On August 10, 1994, the court excused the jury because it could not reach a verdict after fourteen hours of deliberations.

On Tuesday, August 16, 1994, the court held a hearing on Vega Valdez's posttrial motion for judgment of acquittal. The motion renewed similar motions presented and overruled during the trial. A court should grant a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 only when

> "the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged."

*United States v. White,* 562 F.2d 587, 589 (8th Cir.1977) (per curiam) (citations omitted); *see also United States v. Ojeda,* 23 F.3d 1473, 1475 (8th Cir.1994) (citing *White* ).

■ To prove the charge against Vega Valdez the government was required to establish beyond a reasonable doubt that he knowingly possessed cocaine and intended to distribute it. The fighting issue in this case is whether there is sufficient evidence for a

jury to find Vega Valdez knowingly possessed the controlled substance found in his car. Defendant argues he was unaware the car he drove contained cocaine. To prove knowing possession the government must prove Vega Valdez had actual or constructive possession of the drug. *Ojeda*, 23 F.3d at 1475 (citation omitted). The government may prove constructive possession through proof of a defendant's "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *Id.* (citation omitted). Eighth Circuit Model Criminal Jury Instruction Number 8.02, included in the instructions in this case, provides:

> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Eighth Cir.Model Jury Instr. No. 8.02 (1994 ed.).

The Eighth Circuit Court of Appeals has addressed possession issues similar to that in the present case. The case most nearly on point is *United States v. Pace*, 922 F.2d 451, 452–53 (8th Cir.1990). There the court of appeals reversed a conviction because the government produced insufficient evidence to prove the defendant driving a station wagon knew it contained nearly two hundred pounds of cocaine concealed in another passenger's luggage. Philip Pace agreed to help Thomas Mason deliver a station wagon from Los Angeles to Chicago. Two men in a van followed them. When Pace asked Mason the purpose of the trip, Mason told him it was not any of his business. Mason told Pace they would drive the car to Chicago and immediately fly home. Pace was to receive two hundred and fifty dollars for the trip. The drugs were in two duffel bags on the floorboard of the backseat, a duffel bag in the cargo area, and a suitcase in the cargo area. Mason's personal effects were in a plastic bag.

A Missouri State Trooper stopped Pace for speeding. Mason, who said he was a car dealer, claimed ownership of the car. He could not produce the car registration, and a computer check showed he did not own the car. While in the patrol car Pace confirmed Mason's story that they were going to Chicago to sell the car. At trial Mason changed his story several times regarding the purpose of the trip and the money he would receive for the trip. Mason testified he was a heavy cocaine user and drug lords forced him to drive the car. He said the van following them contained four times as much cocaine as the car, and the men in the van were drug lords whose purpose was to ensure the security of the cocaine. At trial Pace slightly changed his story, testifying that he did not recall telling the trooper they were going to sell the car but that he agreed to help drive the car to Chicago and leave it at O'Hare Airport. The trooper who stopped Pace testified he thought Pace gave truthful personal information but appeared very nervous in the patrol car. Pace testified he was not nervous; he was cold.

The majority found that since Pace saw the bags on the backseat floor but never examined or opened them, and there was no evidence Pace saw the luggage in the cargo area, a jury could only guess Pace knew what they contained. *Id.* at 453. The court also refused to find that Pace's suspicions should have been aroused by the men in the van or Mason's answer to Pace's question. *Id.* The court concluded a reasonable-minded jury must have had a reasonable doubt about Pace's intent. *Id.*

The dissent set forth the facts in detail and concluded a reasonable jury could infer Pace knowingly possessed cocaine and intended to deliver it. *Id.* at 454–58. Acknowledging that mere presence may not have been enough to prove guilt, *id.* at 458, the dissent argued a reasonable jury could infer knowledge from the circumstantial evidence. The dissent stated a reasonable jury could find, among other things, that Pace lied to hide the real purpose of the trip; Pace's nervousness was evidence of consciousness of guilt; Pace knew the extra bags were not Mason's personal luggage and would remain with the car in Chicago; Mason lied when he said he did not tell Pace about the drugs; Pace was aware of Mason's cocaine addiction and knew Mason's lifestyle demanded more cash than a

used car salesperson could earn; Pace knew of the cocaine from the quantity and location of it, and his agreement to make a cross-country trip and immediately fly home. *Id.* at 455–58.

The government in this case argues the evidence considered as a whole is "greater than the mere sum of its parts," and that there is sufficient evidence for a reasonable jury to find Vega Valdez knowingly possessed the cocaine. *See United States v. Cardenas,* 748 F.2d 1015, 1020 (5th Cir.1984). The government argues its case against Vega Valdez is stronger than the case against Pace.

The government also relies on *United States v. Cortez,* 935 F.2d 135, 143 (8th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992). There the court of appeals found enough evidence to prove knowing possession where an officer discovered eight hundred pounds of marijuana hidden in the van of a lone driver. Cortez was stopped on Interstate 35 in Missouri for weaving on the road. He told the trooper the van was his uncle's but did not know his uncle's name. When asked where he was going, Cortez said Illinois. When asked where in Illinois, Cortez responded, "I don't know." *Id.* at 137. The officer obtained Cortez's consent to search the van and found the marijuana. In a later police interview, Cortez stated through an interpreter that he did not know to where he was driving or whom he was to meet. He explained his uncle paid him a thousand dollars to drive the van from Texas to a spot along Interstate 80 near the Iowa River at Coralville, Iowa. Someone was to signal him to stop by honking a car horn and flashing their lights. Cortez was to deliver the van and then return to Texas by bus. Police asked Cortez to cooperate on several occasions to which he replied, "What's in it for me?" *Id.*

The *Cortez* court distinguished *Pace.* Cortez was the only person in the van when police found the drugs, and defendant's sole control over the van "alone [was] sufficient to satisfy the government's burden." *Id.* at 143 (citing *United States v. Muniz–Ortega,* 858 F.2d 258 (5th Cir.1988)); [1] *cf. United States v. Thomas,* 992 F.2d 201, 204 (8th Cir.1993) (quoting *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988) (citation to *Cardenas,* 748 F.2d at 1019 omitted) in support of ruling that defendant had constructive possession of contraband). The *Cortez* court added it had no doubt the case was submissible because of Cortez's "evasive answers and his telling inquiry 'What's in it for me?'" *Cortez,* 935 F.2d at 143.

The evidence supporting guilt in *Cortez* was much stronger than the government's evidence here. Vega Valdez gave no evasive answers to the trooper. He said he was on his way to Omaha to see his daughter; letters from and a photo of his daughter seized during the search of his luggage corroborated his statements.

Recently, in *Ojeda* the court of appeals affirmed the conviction of a defendant caught carrying 7.1 kilograms of methamphetamine in a car while driving from California to Illinois. *Ojeda,* 23 F.3d at 1474. A police officer stopped Ojeda for speeding. Neither he nor his nephew traveling with him owned the car. Ojeda told the officer they were going to Illinois to visit a relative. However, they did not know the address or phone number of the relative. The officer smelled a strong pine odor which he knew often indicated the presence of drugs. He obtained consent to search the car and found the packages of methamphetamine behind

---

**1.** In *Muniz–Ortega,* the Fifth Circuit held a jury could infer a defendant driving a flat-bed truck near the Mexican border, carrying 239 pounds of marijuana in a hidden compartment, knowingly possessed the marijuana. *Muniz–Ortega,* 858 F.2d at 261. Police discovered the compartment after noticing "an unaccountable space of six to eight inches between the bottom and top sides of the truck bed." *Id.* at 259. The *Muniz–Ortega* facts differ from those here. A person could discern the contours of the hidden compartment of Muniz's truck simply by inspecting its exterior.

The compartment in the car Vega Valdez drove was virtually undetectable.

The court also notes that while the Eighth Circuit has adopted *Muniz–Ortega,* the Fifth Circuit recently explained, "Knowledge can be inferred from control of the vehicle in some cases; however, when the drugs are hidden, control over the vehicle alone is not sufficient to prove knowledge." *United States v. Garza,* 990 F.2d 171, 174 (5th Cir.1993) (citing *United States v. Richardson,* 848 F.2d 509, 513 (5th Cir.1988)).

trap doors in the backseat. The doors were electronically opened with pins inserted in the driver's visor. Ojeda's fingerprints were on the outside of several packages. Ojeda and his nephew testified Ojeda unknowingly walked in the room where his nephew was packaging the drugs before the trip. The nephew testified he lied to Ojeda about the contents of the packages and told Ojeda to leave the room after he touched several of the sealed packages. The court found a reasonable jury could find knowledge based on Ojeda's fingerprints, the strong odor which a naive passenger would likely question, the trap doors which were opened with pins inserted in Ojeda's visor, Ojeda's ignorance about the phone number and address of the relative they were planning to visit, the extended car trip, and large quantity of drugs. *Id.* at 1476 & n. 3. *Ojeda* is plainly factually distinguishable. The evidence there fully supported the jury's finding of knowing possession of drugs.

■ On the limited evidence presented at trial in this case no reasonable jury could find beyond a reasonable doubt that Vega Valdez knowingly possessed a controlled substance. The evidence on the issue of knowing possession in *Cortez* and *Ojeda* is not present here. Even the evidence of knowledge in *Pace* is stronger than this case. "While reasonable inferences from the evidence weigh against the defendant, speculation does not." *Pace,* 922 F.2d at 453.

Compared to the trips in *Pace, Cortez,* and *Ojeda,* Vega Valdez's drive was a much shorter distance. *See Ojeda,* 23 F.3d at 1474 (California to Illinois); *Cortez,* 935 F.2d at 137 (Texas to Illinois or Iowa); *Pace,* 922 F.2d at 453 (California to Illinois). Vega Valdez's stated purpose for the trip was corroborated and consistent with lawful activity, in contrast to the suspicious circumstances in other cases. *See Cortez,* 935 F.2d at 137 (dropping off van on highway and taking bus home); *Pace,* 922 F.2d at 453 (leaving car at airport and flying home immediately). He did not give evasive answers to the trooper and he readily gave what the evidence shows to be truthful personal information. He did not hesitate in saying his purpose was to see his daughter in Omaha, Nebraska, nor did he hesitate in giving her name, Angelica. While he appeared nervous, so did Pace. *Pace,* 922 F.2d at 453, 455. Only the dissent in *Pace* stated a jury could infer Pace was nervous because he had something to hide. *Id.* at 455. Moreover, Vega Valdez had legitimate reasons to be shaky. He had exited the interstate highway to use the men's room. He is an illegal alien. The trooper patted Vega Valdez down for weapons when he initially got out of the car. The government makes much of defendant's unabating nervousness after the trooper gave him a warning citation. Yet almost immediately after giving Vega Valdez the warning, the trooper asked defendant if he was doing anything illegal. Defendant had reason to appear flustered.

The trooper discovered five hundred dollars in twenty dollar bills concealed in Vega Valdez's bag, and a government witness testified twenty dollar denominations are commonly used in drug transactions. The court takes judicial notice of the fact travelers often place money in luggage rather than carry it on their person. Five hundred dollars is not such a large sum as to suggest an unlawful purpose. It is consistent with the amount a traveler might spend on a trip. The government presented no evidence Vega Valdez was paid to transport the drugs or the car.

There is no evidence Vega Valdez touched the packages of contraband or explored the hidden compartment. Even if he had observed the loose backseat and markings on the armrest, there is nothing in the record to show he had the same knowledge as the trooper whose suspicions were aroused when the trooper saw the seat ajar. There were no other clues in the car to tip off Vega Valdez that it contained contraband. Although Vega Valdez told the trooper the car's owner had previously let him use it on occasion, the evidence proves only one prior use about a week before, when he received two Illinois traffic citations. (Exhs. 10 & 11.) The evidence is silent on any uses of the car that would disclose to Vega Valdez the presence of a secret compartment.

Vega Valdez had a beeper in the front seat with him, but that fact falls far short of

inferring knowledge of a secret compartment containing unlawful drugs. The two law enforcement officers testified that many people use beepers for legitimate purposes. The trooper who seized the beeper testified it could not then send or receive messages.

Finally, after the trooper found the cocaine, Vega Valdez stated to him, "Give me a break. It's not my car." The prosecutor argued in closing that defendant's statement and his failure to deny the drugs were his could be interpreted as knowledge of guilt. The court finds the statement in context is too ambiguous to support a finding of knowledge or lack of knowledge. This statement was a far cry from Cortez's statements during his police interviews, "What's in it for me?" *Cortez,* 935 F.2d at 137.

Based on all the evidence, viewed in the light most favorable to the government, a reasonable jury must have had a reasonable doubt whether Vega Valdez knowingly possessed the cocaine. The motion for judgment of acquittal is granted. There will be no retrial. The government's motion to continue trial to September 6, 1994, is denied as moot.

IT IS SO ORDERED.