**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE HUNTER GROUP, INCORPORATED,
Plaintiff-Appellant,

v.

SUSAN M. SMITH; MARTIN W.
REIMER; RENEE Y. CREECH;
CATHERINE COOPER; GAIL E. MANN;      No. 97-2218
DELOITTE & TOUCHE, LLP,
Defendants-Appellees,

and

JULIA M. SALTER,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-97-1871-AMD)

Argued: June 5, 1998

Decided: September 23, 1998

Before MURNAGHAN and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stacie Eileen Tobin, PIPER & MARBURY, L.L.P., Balti-
more, Maryland, for Appellant. Stephen M. Sacks, ARNOLD &

PORTER, Washington, D.C., for Appellees. **ON BRIEF:** James D. Mathias, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellant. Ronald A. Schechter, Susan E. Huhta, ARNOLD & POR-TER, Washington, D.C.; Daniel P. Goldstein, BROWN, GOLD-STEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Hunter Group, Inc. ("Hunter") appeals an order of the district court denying Hunter's motion for a preliminary injunction. Hunter seeks to enjoin five of its former employees (the "individual defendants") from competing with Hunter through their employment with Deloitte & Touche Consulting Group ("Deloitte"), and to prevent the disclosure and use of Hunter's trade secrets and confidential information by those employees.

We review the denial of preliminary injunctive relief for abuse of discretion, Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 814 (4th Cir. 1991), in light of the familiar four-factor test first announced in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977). We affirm.

I

PeopleSoft, Inc., owns and licenses software to companies for use in financial management, human resources, and personnel functions. As a "PeopleSoft Partner," Hunter contracts directly with purchasers to install the software and to teach employees how to use the software. Hunter's implementation consultants perform the installation, often customizing the software to accommodate a client's particular needs. Following implementation of the PeopleSoft product, training

2

consultants in Hunter's Education Services Group instruct the client's employees how to use the new software. In teaching clients how to use the PeopleSoft product, Hunter relies on its own proprietary "courseware," or written training materials, to explain the functions of the software and to provide training exercises. The courseware is written by training consultants in Hunter's Education Services Group.

New consultants hired by Hunter, who often have little or no experience with the PeopleSoft product, participate in a program Hunter calls "Boot Camp." Hunter conceived of Boot Camp, a one month internal training program designed and delivered by members of the Education Services Group, as an alternative to the training classes offered by PeopleSoft, which often took three to five months to complete.

Hunter employed Martin Reimer, Renee Creech, Catherine Cooper, and Gail Mann as training consultants in Hunter's Education Services Group. Each of those individuals had come to Hunter with significant consulting experience; Creech, Reimer, and Mann had previous experience with the PeopleSoft software. During their employment with Hunter, the training consultants participated in the development of courseware and delivered training to new consultants in Hunter's first Boot Camp in April 1997. Susan Smith managed the Education Services Group and was the direct supervisor of the training consultants.

As a condition of employment with Hunter, each of the individual defendants executed an Employment Agreement ("Agreement"). Other than the date of execution, the Agreements are identical. Each Agreement contains several noncompetition provisions, including covenants: (1) not to perform consulting services for a competitor of Hunter's for a period of six months following termination, (2) not to disclose or use Hunter's confidential information or trade secrets at any time, and (3) not to solicit the employment of any Hunter employee for one year following termination.

Hunter terminated Smith's employment on January 20, 1997. Shortly thereafter, Smith accepted the offer of a position at Deloitte as a supervisor in Deloitte's National Education group. By June 1997, each of the individual defendants had terminated their employment at Hunter and joined Deloitte's consulting group. At Deloitte, they have

3

been engaged in taking PeopleSoft classes, writing courseware to be used in delivering PeopleSoft training to Deloitte's implementation consultants, and developing an internal training program. Several of the individual defendants are developing courseware on the same PeopleSoft products for which they wrote courseware at Hunter. For example, Creech, who developed Hunter's "General Ledger" courseware, is developing a "General Ledger" course at Deloitte. Cooper is responsible at Deloitte, as she was at Hunter, for creating templates for the courseware. The use of templates, files that structure the appearance and layout of a document, ensures that the materials have a consistent and attractive appearance.

On June 10, 1997, Hunter filed suit against Deloitte and the individual defendants in the United States District Court for the District of Maryland. The six-count complaint alleged violations of the noncompetition provisions of the Agreements and of the Maryland Uniform Trade Secrets Act, tortious interference with contractual relations by Deloitte, unfair competition, and a civil conspiracy to harm Hunter. Upon Hunter's motion, the district court entered a temporary restraining order enjoining the individual defendants from further violating the noncompetition provisions of the Agreements, and enjoining Deloitte from contacting Hunter employees or using Hunter's confidential information or trade secrets. The defendants later consented to the entry of a preliminary injunction pendente lite with respect to the alleged solicitation of Hunter employees.

On July 30 and 31, 1997, the district court conducted a hearing on Hunter's motion for a preliminary injunction. By order dated August 29, 1997, the district court denied Hunter's request that the defendants be enjoined from competing against Hunter in their employment at Deloitte, and from retaining, revealing, or otherwise using Hunter trade secrets or confidential information. Hunter filed a timely appeal.

II

It is axiomatic that a "clear showing of irreparable harm" is a prerequisite to the issuance of a preliminary injunction. Direx Israel, 952 F.2d at 812; see Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991) ("To succeed, the [plaintiff] must show that it will sustain irreparable harm without a preliminary injunction.");

4

Faulkner v. Jones, 10 F.3d 226, 237 (4th Cir. 1993) (Hamilton, J., dissenting) (stating that the "inability to establish irreparable harm `is by itself a sufficient ground upon which to deny a preliminary injunction'") (quoting Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)). To satisfy its burden of proving irreparable injury, the plaintiff must demonstrate a causal connection between the alleged harm and the actions to be enjoined; a preliminary injunction will not issue unless it will remedy the alleged injuries. See Faulkner, 10 F.3d at 235-36 ("[A]ny inquiry into the irreparable harm resulting from the denial of interim relief must necessarily begin with an analysis of the degree to which that particular relief remedies the alleged injuries.").

Hunter claims that it is threatened with the loss of clients and goodwill as a result of the defendants' violation of the covenants not to compete contained in their Employment Agreements. In support, Hunter relies on the testimony given by Mary Weaver, Hunter's Senior Vice President in charge of the Education Services Group. Weaver testified that since the individual defendants left, Hunter has lost one contract because of its inability to produce expert PeopleSoft consultants. In the absence of sufficient training consultants, Hunter has been required to staff three existing contracts with implementation consultants. According to Weaver, Hunter no longer expects to achieve its goals with respect to the number of training consultants to be hired, the number of new consultants trained, and overall revenue.

Weaver's testimony is persuasive evidence that Hunter has incurred substantial losses as a result of the departure of five employees, comprising almost half of Hunter's twelve-member Education Services Group. We conclude, however, that a preliminary injunction will not remedy the injuries Hunter has identified. Hunter's injuries are caused by a lack of training consultants with the necessary expertise in PeopleSoft. Enjoining the individual defendants from performing consulting services at Deloitte will not address that harm.

Hunter argues, however, that its injuries are compounded by the competitive advantage Deloitte enjoys as a result of its employment of the individual defendants. According to Hunter, the defendants' defection to Deloitte has permitted Deloitte rapidly to enter the market for PeopleSoft consulting services, while simultaneously handi-

5

capping Hunter's ability to compete effectively in the same market. An injunction would allow Hunter time to restore its consulting group to full capacity.

We agree with Hunter that enforcement of a covenant not to compete may forestall the type of competitive imbalance Hunter describes. We decline, however, to issue a preliminary injunction under the circumstances presented by the instant case. It is undisputed that the Agreements' six-month restraint on competition expired some time between July 20, 1997, and December 9, 1997. Therefore, Hunter's contractual right cannot be preserved through the issuance of a preliminary injunction; the right has expired by its own terms. See, e.g., Nationwide Mut. Ins. Co. v. Hart, 534 A.2d 999, 1002 (Md. Ct. Spec. App. 1988) (holding that an employer's request for a preliminary injunction "ha[d] been rendered moot by the passage of time since the one year period set out in the contract" had terminated). A preliminary injunction cannot protect Hunter from the injury it claims, because the injury Hunter sought to prevent by securing its employees' agreement not to compete for six months has already occurred. We are not unsympathetic to the fact that Hunter has diligently sought expedient resolution of its claims, or that its contractual right to relief expired in the midst of the prolonged process of judicial resolution. And we do not foreclose the possibility that an injunction may be an appropriate remedy, should it prove impossible for Hunter to prove damages with any degree of certainty after a full trial on the merits. Because a preliminary injunction will not prevent Hunter's alleged injuries, however, we affirm the district court's refusal to enjoin preliminarily the defendants from working in Deloitte's PeopleSoft consulting group.

III

Next, Hunter argues that the district court abused its discretion in denying Hunter's request that the defendants be enjoined from using or disclosing Hunter's trade secrets and confidential information. In denying Hunter's request for preliminary relief, the district court stated that it did not "find that any of the defendants intentionally or negligently provided to Deloitte, or have used in their work at Deloitte, any of the trade secrets that [Hunter] claims." To the extent that similarities existed between the Hunter courseware that the train-

6

ing materials being developed at Deloitte, the district court concluded that the similarities were traceable to information and materials disseminated by PeopleSoft, Inc., to both companies. After a careful review of the record, we conclude that the district court's factual findings are fully supported by the evidence, and discern no abuse of discretion in the district court's denial of the preliminary injunction.

IV

Finally, we find no merit to Hunter's contention that the district court abused its discretion in excluding evidence relating to Smith's alleged solicitation of the Hunter employees. See Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir. 1992) ("It is well-settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the district court, not to be reversed on appeal absent an abuse of discretion."). The defendants consented before the hearing to the entry of a preliminary injunction on Hunter's claim of solicitation. Therefore, the only issues before the district court were whether the defendants should be preliminarily enjoined from working in Deloitte's consulting group, and from using or disclosing Hunter's trade secrets. The district court found, and we agree, that evidence of how the defendants came to work at Deloitte was not relevant to those issues.

Therefore, the judgment of the district court is hereby

AFFIRMED.

7