**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BARBARA LISA CORBETT,
Plaintiff-Appellant,

v.

FLEETWOOD HOMES OF NORTH
CAROLINA, INCORPORATED; FLEETWOOD
ENTERPRISES, INCORPORATED,

No. 99-1726

Defendants-Appellees,

and

HAMMER, INCORPORATED, d/b/a
National Housing Sales,
Incorporated,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Patrick Michael Duffy, District Judge.
(CA-97-3448-4-23)

Argued: April 5, 2000

Decided: May 3, 2000

Before MOTZ and KING, Circuit Judges, and
John C. GODBOLD, Senior Circuit Judge of the
United States Court of Appeals for the Eleventh Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lauri J. Soles, GRIER LAW FIRM, L.L.C., Columbia, South Carolina, for Appellant. Richard Kennon Hines, V, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellees. **ON BRIEF:** Deborah Harrison Sheffield, F. Barron Grier, III, GRIER LAW FIRM, L.L.C., Columbia, South Carolina, for Appellant. Susan M. Glenn, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The question presented in this appeal is whether the district court abused its discretion in excluding a list of lawsuits offered to prove notice of a claim. Finding no abuse of discretion, we affirm.

I.

Beginning in the early 1950's, manufacturers have used particle board made from an organic compound that emits formaldehyde gas to construct mobile homes. Formaldehyde gas can cause health problems. After the Department of Housing and Urban Development (HUD) increased energy efficiency standards by limiting ventilation in mobile homes in the 1970's, some inhabitants began to experience health effects; in response HUD promulgated standards in 1984 that required testing of the particle board to ensure it met specified limits on formaldehyde gas emissions.

In January 1997, Barbara Lisa Corbett purchased a mobile home that was manufactured by Fleetwood Homes of North Carolina, Inc.,

2

a subsidiary of Fleetwood Enterprises, Inc. (collectively, Fleetwood). Corbett alleges that she moved out of her mobile home in June 1997 because of health problems caused by formaldehyde gas. On November 6, 1997, she filed this action against Fleetwood Homes and Fleetwood Enterprises, as well as against the seller of the home, Hammer, Inc. She settled with Hammer, and Hammer is not a party to this appeal.

Corbett maintains that the HUD standards were insufficient, that Fleetwood knew that the HUD standards were insufficient, and that Fleetwood did not conduct the additional testing necessary to ensure the higher air quality standards that it knew were required to make the mobile homes safe. A critical element of this claim is that Fleetwood knew that there were problems with its homes. To demonstrate notice "that relying on just the particle board manufacturer's certification that they met [HUD's] standards [wa]s not enough," Corbett sought to introduce a list of 118 lawsuits filed against Fleetwood Enterprises. The court excluded the list, but allowed Corbett to argue--and Fleetwood stipulated to the same--that Fleetwood had"known that there were people who claim to have had these problems since 1984, and they continue to have them." The court also permitted Corbett to read into the record Fleetwood's express admission (in response to an interrogatory request) that Fleetwood Homes had received seven complaints and three lawsuits, and instructed the jury that those complaints and lawsuits were relevant "for notice."

At trial several additional references were made to the lawsuits against Fleetwood. First, Corbett's counsel asserted in his opening statement that "there were hundreds, hundreds of prior complaints." The plant manager of Fleetwood Homes, Scott Harkin, testified that there were seven claims and three lawsuits against Fleetwood Homes; he did not mention the 118 lawsuits against Fleetwood Enterprises. In closing argument defense counsel asserted that "all [Harkin] could find complaints of were seven complaints and three lawsuits. That's not an epidemic."

The jury returned a verdict for Fleetwood and the district court denied Corbett's motion for a new trial. She now appeals, arguing that the district court erred in excluding the list of prior lawsuits both because they should have been initially admitted as relevant and not

3

unfairly prejudicial and because they should have been admitted after the defense "opened the door."

II.

The district court found that admission of the list of 118 lawsuits would be "highly prejudicial," and that the lawsuits were only questionably comparable to Corbett's claim. The court therefore excluded the list and instead accepted a stipulation that the defendants had notice of complaints. We review asserted evidentiary errors for abuse of discretion. Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir. 1992).

A district court may exclude even relevant evidence if unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. Interpreting this rule, we articulated a four-prong test for admissibility in Westfield Ins. Co. v. Harris, 134 F.3d 608, 614 (4th Cir. 1998): "(1) [t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or element of the offense. (3) The evidence must be reliable. And, (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact-finding process." Id. (internal quotations omitted). Applying this test in an insurance company's suit against an allegedly fraudulent claimant for fire damage, we found that a district court erred by excluding evidence of the defendant's prior claims and the insurance company's prior payment when all five prior claims were for undisputedly similar fires. Id. at 615-16. Corbett asserts that Westfield requires us to find an abuse of discretion here.

Fleetwood disputes Corbett's contentions on two grounds. First, Fleetwood asserts that Corbett's claim that she only wants to admit the prior lawsuits as evidence of notice is a ruse, and that she in fact wants to admit them as evidence that the HUD standards were insufficient; under these circumstances, the prior lawsuits must be "substantially similar" to Corbett's case to be admissible. See Renfro Hosiery Mills Co. v. Nat'l Cash Register Co., 552 F.2d 1061, 1068 (4th Cir.

4

1977). Alternatively, Fleetwood argues that if in fact Corbett only seeks to introduce the prior lawsuits as evidence of notice, then the lawsuits are not admissible because they are not "sufficiently similar" to Corbett's case. Benedi v. McNeil-P.P.C., Inc. , 66 F.3d 1378 (4th Cir. 1995). We first address the alternative argument, because if we find that the district court did not abuse its discretion in finding that the lawsuits were not "sufficiently similar" to Corbett's case, then they cannot be "substantially similar."

The record contains evidence that some of the lawsuits were irrelevant to the notice issue and contains no evidence as to whether the remaining lawsuits were relevant. Approximately half of the 118 lawsuits were filed prior to 1984 and are thus dissimilar and irrelevant to the claim in the instant case that Fleetwood should have known that the 1984 HUD standards were insufficient. At no time did Corbett seek to introduce a list of only the post-1984 lawsuits. Moreover, Corbett has provided no evidence that the remaining lawsuits were based on homes like her own, which were built after the promulgation of the HUD standards in 1984. Nor has she provided evidence that any of the lawsuits were based on the same symptoms as she suffered. On this evidentiary record, the district court did not abuse its discretion in finding that Corbett did not establish the "sufficient similarity" required to introduce the 118 lawsuits as relevant evidence of notice that the HUD regulations were inadequate.[1]

Corbett relies on two of our cases finding no abuse of discretion in admitting evidence of prior complaints on the grounds that the

_____

[1] At oral argument, Corbett repeatedly noted that Fleetwood provided the list of 118 lawsuits in response to a discovery request for "similar lawsuits." Corbett maintains that therefore the district court abused its discretion in finding that the list did not meet the legal standard of "sufficiently similar." Fleetwood's own internal determination that the lawsuits may be "similar" is irrelevant, however, to our determination of whether they were "sufficiently similar" to be relevant to notice; indeed, Fleetwood asserts, and Corbett does not dispute, that during discovery Corbett's counsel conceded that "[t]he fact that[the list] is produced [in response to a request for similar lawsuits] does not ma[k]e it admissible and that is another battle to be fought at another time." Brief of Appellee at 7.

5

complaints were relevant to notice. See Benedi , 66 F.3d at 1385 (district court did not abuse discretion in admitting"evidence case reports" of drug reactions for notice); Ellis v. International Playtex, Inc., 745 F.2d 292, 305 (4th Cir. 1984) (district court did not abuse discretion in admitting consumer complaints for notice). As we explained in Benedi, however, even when complaints are relevant to notice, "district courts have the discretion either to admit the prior reports [complaints] or to exclude them under Rule 403 and instruct the jury that the defendant received notice through prior reports." Benedi, 66 F.3d at 1385 (emphasis added); see also Gardner v. S. Ry. Sys., 675 F.2d 949, 952 (7th Cir. 1982). The court here chose the latter option, allowing Corbett to read to the jury Fleetwood's admission that it had received notice of seven complaints and three lawsuits, and instructing the jury that the complaints and lawsuits were relevant "for notice." It acted within its discretion in making that choice.

III.

Corbett also argues that the district court abused its discretion in excluding the list of lawsuits because the defense"opened the door" and therefore the list should have been admitted in order to "cur[e]" misrepresentations by the defense. See 1 John Henry Wigmore, Evidence § 15 (4th ed. 1983).

A.

As an initial matter, we must determine if Corbett preserved the issue for appellate review.

Corbett asserts that Fleetwood "opened the door" three times to the evidence of prior lawsuits. First, she contends that in his opening statement, defense counsel mischaracterized the symptoms of formaldehyde as "odor in the home, and eyes watering and tearing." Next, she claims that Harkin, the Fleetwood Homes plant manager, "opened the door" with his testimony. Finally, Corbett maintains that defense counsel "opened the door" with his closing arguments that "we don't have an epidemic of complaints," and that "[t]here are no complaints."

Though Corbett's counsel properly objected to the defense's opening statement, the statement and objection in opening argument were

6

related to the symptoms of formaldehyde, not prior complaints or notice. Corbett therefore did not preserve the issue of whether the lawsuits were improperly excluded as evidence of notice of complaints with that objection. Corbett also did not preserve the issue of whether the defense "opened the door" with its counsel's arguably deceptive comments in closing argument because her counsel did not lodge any objection at that time.

However, Corbett's counsel did properly object to Harkin's testimony and seek to introduce the printout of the 118 prior lawsuits after Harkin stated that "if I felt or if Fleetwood felt that we had a problem with formaldehyde we would definitely test." In response to Corbett's argument that "he has opened the door," the district court responded that "[y]ou've got all you need on that." Therefore, Corbett has preserved the issue of whether Harkin's testimony "opened the door."

B.

The decision as to whether to admit otherwise inadmissible evidence after the other party has "opened the door" lies firmly within the "discretionary authority" of the trial judge. See Hinkle v. Hampton, 388 F.2d 141, 145 (10th Cir. 1968) (affirming trial judge's decision to admit otherwise inadmissible evidence "to allow the defendant to meet [the plaintiff's `minimiz[ing]' prior injuries] on an equally broad front by allowing the development of the true facts").

In this case, the district court determined that permitting Corbett to argue the point, reading to the jury Fleetwood's admission that Fleetwood Homes had received seven complaints and three lawsuits, and instructing the jury that those complaints and lawsuits were relevant to notice was sufficient to demonstrate notice. We cannot conclude that this ruling constituted an abuse of discretion. We also note that Harkin's statement was not necesarily inconsistent with Fleetwood's concession that it had notice of complaints--the filing of a lawsuit does not invariably indicate that a problem exists with the product at issue, and Harkin and Fleetwood may have continued to "feel" that the suits were frivolous. Accordingly, while we might have reached

7

a different conclusion, we believe the district court acted within its discretion in excluding the list of lawsuits.**2**

<u>AFFIRMED</u>

_____

**2** We are uncertain whether Corbett also asserts error in the district court's denial of a new trial on the grounds that the court had erred in its exclusion of the lawsuits. If so, we reject that argument because the district court did not abuse its discretion in its evidentiary ruling. <u>See</u> <u>Bristol Steel Iron Works v. Bethlehem Steel Corp.</u> , 41 F.3d 182, 186 (4th Cir. 1994); Fed. R. Civ. P. 61.

8